## LUCAS, GUARDIAN &c. v. KERNODLE, ET ALS.

1. A father, by deed, conveyed certain slaves to a trustee, for the use of his daughter during her life, to be hired out, and the monthly or annual proceeds to be paid to her, and at her death the slaves to vest in her children. The daughter married, and the husband took possession of the slaves, and hired them out for a year, taking the note for the hire, payable to himself, and transfered it by assignment to one Kernodle; in the month of March of that year, his wife died—Held, 1. That as the slaves vested in the children on the death of the mother, the title will draw after it the right to the hire of the slaves after that period.

2. That under the statute of this State, the assignee of the husband, though a *bona fide* purchaser without notice, was in no better situation than his assignor, and affected by all equities which would bind him, and must therefore be considered a trustee for the amount of the hire of the slaves, which accrued after the death of the owner of the life estate.

2. A Court of Chancery has jurisdiction in such a case.

Error to the Chancery Court at Montgomery.

THIS was a bill in Chancery filed by the plaintiff in error in the Chancery Court at Montgomery, as the guardian, and next friend of Sarah Shelman and five other infants. The bill charges, that John Lucas, the grandfather of the minors by deed, dated in May, 1829, (and which is annexed to the bill) conveyed to Charles J. McDonald certain slaves in trust, for the use and benefit during her life, of Martha A. Shelman, and at her death, remainder over to the minors. That a short time after the execution of the deed, and whilst in the possession of the property, viz: in December, 1836, she intermarried with one John Simmons, who, as her husband, took the slaves into possession, and immediately thereafter, hired two of them to one Clement Freeney, for the term of one year, commencing on the first of January, 1837, for six hundred dollars, and executed his note for that amount, with one Alfred P. King, as his surety, in favor of Simmons.

On the 13th March, Mrs. Simmons, the mother of the minors, died. Notice was in a few days after, given to Freeny by the minors, of their right to the hire of the slaves, from the death of their mother, and that they should hold him responsible therefor; that Simmons transferred the note received on the hiring of the slaves, to one Richard Kernodle, and is believed to have left the State insolvent; that Freeny is dead and his estate is reported insolvent; that Kernodle has commenced an action against King, and that all the parties were informed of the right of the minors to the hire of the negroes after the 13th March. The bill prays an injunction to the suit at law, and that Simmons, the administratrix of Freeny, King and Kernodle be made parties to the bill; that an account be taken, &c. &c. The injunction was granted by a Judge of the Circuit Court.

Lucas, guardian &c. v. Kernodle, et al.

At the June term, 1840, of the Chancery Court, the Chancellor, on motion, dismissed the bill for want of equity; from which decree this writ of error is prosecuted.

DARGAN, submitted the case for the plaintiff in error, without argument.

FAIR, for defendant in error.

ORMOND, J.—The life estate of the mother of the plaintiffs in error, out of which the present controversy has grown, was created by the deed of her father, by which the slaves were given to a trustee for her use during her natural life, he " permitting her to hold and enjoy the same, at his discretion, to hire out the same, paying the monthly or annual increase to my said daughter." The deed further provides that, at her death, the slaves and other property shall be vested in her children.

After the making of the deed, the lady married the defendant, Simmons, who thereby obtained as her husband, the possession of the slaves mentioned in the deed, and hired two of them out for a year. His wife having died during the year, the first question necessary to be decided, is, to whom does the proceeds of the hire of the slaves belong.

It is not necessary to enquire into the right, to that portion of it, which accrued from the labor of the slaves, at the time of the death of the wife, as it is conceded in the bill, that it belongs to the assignee of Simmons; as by the terms of the deed, the negroes were authorised to be hired, and by the year, it must have been contemplated by the donor, that it might happen, that the right to the slaves would vest in the plaintiffs in error, at a time when they would not be able, from the contract of hiring, to obtain possession of them. No provision is made in the deed for such a case; but no difficulty could arise, for as the right to the slaves vested at the death of the mother, the right will in equity draw after it, the hire of the slaves for such period.

This would, undoubtedly, be the case, if the trustee, or the mother, had made the contract of hiring. Is the case varied, because the slaves were hired out by Simmons, who took the

18

note in his own name, and by assignment transferred it to another. It is obvious that Simmons could acquire no right by a breach of the trust, and it is not easy to conceive on what principle, he could convey a larger interest in the note, than he had himself. His interest certainly ceased a the death of his wife; beyond that, as he had no title to the note, he could convey none ; but the note being an entire thing, a transfer, though it will convey the legal title in the whole note, will only convey the beneficial interest in that part, which belonged to the assignor, and as to the residue, the assignee, who stands in the shoes of the assignor, will be a trustee for those who are beneficially entitled to it.

It is supposed by the Chancellor, that the equity of Kernodle, supposing that he had no notice of the title of the complainants, is equal to theirs, and that, having the legal title, he must prevail.

In the case of Smith v. Pettus et al. 1 Stew. & Por., 107; it was held, that the assignee of a note, for valuable consideration and without notice, was affected by a latent equity subsisting between the parties.

The Statute of this State, making choses in action assignable, merely confers on the assignee the legal title, and enables him to sue in his own name; but subjects him to every defence, which existed between the original parties to it.

By analogy it follows very clearly, that Kernodle, the assignee in this case, is merely clothed with the title of his assignor; if he was a trustee forthe whole amount of the note, the assignee must occupy the same position; and his being a *bona fide* purchaser without notice, will not vary the case. It follows as a matter of course, that the rule must be the same where the assignee is beneficially interested in but a part of the note.

It is, also supposed that, conceding that the plaintiffs in error have a right to the hire of the slaves after the decease of their mother, they may recover at law, and therefore, Chancery will not take jurisdiction. Without entering into the enquiry, whether such an action could be maintained, it is sufficient to say that the plaintiffs in error have a clear right to ask the interposition of a Court of Chancery. The whole matter in contro-

versy grows out of a technical trust, and those claiming under it, have a clear right to ask its enforcement in a Court of Chancery.

In the case of Bibb v. McKinley et al., 9 Por. 647; it was held that, if one intrudes upon an infant, he shall receive the profits but as guardian, and the infant shall have an account against him in Chancery as guardian, for equity will consider him as a trustee.   If, however, the infant so elect, he may treat him as a trespasser; see also, the cases there cited.

The decree must be reversed and the cause remanded for further proceedings.