## GRAHAM vs. NESMITH et al.

1. N., having sold to G. three quarter sections of land for a thousand dollars each, executed to him a title bond for two hundred and eighty acres, and a deed for the balance; and G., to secure the purchase money, gave his three notes, each for a thousand dollars, and payable at different times— the two, first due, absolutely, and the last, on condition that full title should be made. N. afterwards conveyed to G. one hundred and twenty acres of the land embraced in the bond, transfered, all the notes for valuable considerations, became insolvent, and left the State, without making, or being able to make title, to the remaining quarter section of the land. *Held*—That the fair inference from the circumstances is, that the parties understood and intended the condition annexed to the note last-due as an indemnity against any damage, which G. might sustain by the failure of N. to make title to the residue of the land, and, it not appearing to be insufficient, the payment by G., in good faith, of the note first due, and, afterwards, of the conditional note, with notice of the transfer of the second note, will not entitle him to be relieved in equity against the payment of the latter.

Error to the Chancery Court of Butler. Tried before the Hon. J. W. Lesesne.

The bill in this case was filed by the plaintiff against Nesmith & Snell, the defendants in error, and alleges that on the 9th Feb. 1838, he purchased of Nesmith three quarter sections of land at and for the price of one thousand dollars each, making in the aggregate three thousand dollars, for which he gave him his three notes for one thousand dollars, respectively, the one payable on the 1st January 1839, another on the 1st Jan. 1840, and the other on the 1st Jan. 1841; that he received titles to all said land, except two hundred and eighty acres thereof, and a bond from Nesmith, conditioned to make titles to that portion on the first day of Jan. 1839; that he has since received titles for one hundred and twenty acres of the land included in the bond for titles, leaving one quarter section still unconveyed; that he has paid the first and third notes, and a judgment has been recovered against him by Snell on the second; that Nesmith has absconded from the State, is insolvent, and has not made and is unable to make title to the said quarter section of land; that Snell, when he received the note on which he has recovered his judgment, had full notice of all the circumstances; and that, though he does not know what consideration, if any,

was given by him for it, he has understood that Nesmith was indebted to him in some amount, and that he took the note as collateral security therefor. The bill further charges that there was little or no consideration paid by Snell for this note, and insists that he answer and set forth fully and particularly the terms and conditions on which he received it from Nesmith, and the consideration and amount passing from him to Nesmith for the same. The prayer of the bill is for a rescision of the contract, to the extent of the quarter section of the land, to which no title can be made, an injunction perpetually restraining the judgment obtained by Snell, and general relief.

Snell answered the bill, admitting the purchase of the land as alleged, the transfer of the second note to him and his recovery of judgment on it, and the removal from the State and insolvency of Nesmith. He also admits that he knew that the note was given for land, but denies that he knew, at the time he received it, for what particular land it was given, or that full titles had not been made. Answering further, he denies that the note was received by him without consideration, or as collateral security for a debt, but avers that Nesmith was indebted to him in the sum of eight hundred dollars, and that he took said note from him, before its maturity, in full discharge and satisfaction of such indebtedness. He states that the complainant had notice of the transfer of said note to him before he took up the third note; that the third note, on its face, contained a stipulation that it was not to be paid until the title was made to the land; that the other notes contained no such stipulation, and that the complainant took up this third note by the payment of a sum, not exceeding four hundred dollars, to the person, to whom Nesmith had transfered it. The answer is substantially sustained by the testimony, and the bill on the final hearing was dismissed by the chancellor.

T. & J. Williams, for the plaintiff in error.

Watts & Jackson, for the defendants.

PARSONS, J.—It is not the complainant's object to treat the purchase as an entire contract, and to rescind it because he did not get title to part of the land. His bill is not adapted to such relief, nor does he, in fact, now contend for any such thing.

Two of his notes for the purchase money were payable absolutely; the third was made payable in express terms, if the title should be made ; so that no recovery upon that note could have been had against him, before the titles were completely conveyed. The reason of this difference in the notes is easily understood from the circumstances of the transaction. The complainant at the time got a perfect title to one part of the land, but not of the other: to indemnify himself against the risk of having to pay for the latter part before he should get a title to it, the third note was made payable if the title should be made. There is nothing in the case to satisfy us that this indemnity was not ample for the loss of the part of the land to which the complainant did not get a title. We are bound to infer from the circumstances of the case, that the complainant so regarded it himself, and that no other was agreed upon or contemplated by either of the parties. Nesmith himself, therefore, might have recovered judgment on the two other notes against the complainant, and he could have found no relief in equity, for those notes were payable absolutely, and the inference from the entire case is very strong that they were made and accepted on account of the part of the land to which the complainant got a title. It may be conceded that the complainant paid the note which first matured, and that his rights with respect to the present question are to stand upon the basis of his having done so in ignorance of the fact that Snell was the holder of the second note. Against Snell, in this view, he is entitled to all the advantage of such payment.

The complainant, in his bill, states it as his opinion that Nesmith transfered the second note to Snell as collateral security of an existing debt which the former owed to the latter, but that he does not know the amount; and the bill proceeds to state that Snell paid little or no consideration for the note—and the complainant, by his bill, "insists that said Snell answer and set forth fully and particularly the terms and conditions on which he received the said note from said Nesmith, and that he shall also answer and set forth what was the consideration and the amount passing from him to said Nesmith for said note. Snell responds to this, in substance, that he purchased the note of Nesmith before it was due ; that he took it in discharge of two debts which Nesmith owed, amounting together, with the inte-

rest thereon, to something over eight hundred dollars, which was the full value of the note. · With the exception of the time of the purchase, this part of the answer is strictly responsive and is evidence.

Nesmith passed· the third note, which was made payable if the title should be made, to another person, and the complainant took it up from the holder, paying less than half its amount, however; and now having discharged· the first and the third notes, he seeks to enjoin Snell from collecting the second, because he failed to get title to part of the land, although he had otherwise indemnified himself for that, on the face of the third note, which he chose to take up. But he did this, as the proof shows, after he knew that Snell held the second note. It is not possible for him to find relief in equity against Snell, under such circumstances. He relies upon the facts, that Nesmith became insolvent and left this State, and that when Snell purchased the note he was aware of all the facts of the case. It is not obvious how the complainant was prejudiced by the insolvency or absence of Nesmith, and if Snell knew all the facts, he knew that the second note was good and valid and that the complainant was bound to pay it, and this being so, when Snell purchased the second note, the complainant, with sufficient knowledge of that purchase, could not destroy Snell's rights by purchasing the third note, and consequently there is no equity in his case.

It is conceived that the cases of Smith v. Pettus, 1 Stew. & Por., 107, and Lucas v. Kernodle et al., 2 Ala. 199, do not apply to the present question. The complainant had no latent equity or other defence against the second note, at or before the time when he had notice that it belonged to Snell. He founds his equity upon a subsequent and wrongful act of his own. At least his act was wrongful if he intended to make it injurious to Snell.—See Nelson & Hatch v. Dunn, 13 Ala. 259.

Let the decree be affirmed.